# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE INSURANCE GUARANTY ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:17-cv-01070<br>Chief Judge Crenshaw |
| PENGUIN RANDOM HOUSE, LLC, and PEARSON EDUCATION, INC. | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

Tennessee Insurance Guaranty Association ("TIGA") sued Penguin Random House, LLC and Pearson Education, Inc. in the Davidson County Chancery Court seeking to recover payments made to, and on behalf of, Carol Rediker, an employee of Dorling Kindersley Publishing. TIGA's cause of action arose after Reliance Insurance Company became insolvent, and TIGA assumed certain of its obligations, including payments with respect Ms. Rediker's workers' compensation claims.

After Defendants removed the action to this Court, TIGA filed a Motion to Remand (Doc. No. 6) pursuant to 28 U.S.C. § 1447, arguing that this Court lacks subject matter jurisdiction. TIGA also requests attorney's fees and costs for having to defend against the allegedly improvident removal.

For the reasons set forth below, the Motion will be granted, but the fee request will be denied.

## I. Motion to Remand

In Carden v. Arkoma Associates, 494 U.S. 185, 189 (1990), the Supreme Court observed that "the rule regarding the treatment of corporations as 'citizens' has become firmly established," and that it has "just as firmly resisted extending that treatment to other entities." A corporation is considered a legal person whose citizenship does not depend on shareholders; it is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). In contrast, unincorporated associations do not themselves have any citizenship; hence "the oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members." Carden, 494 U.S. at 195-96.

Despite this seemingly rigid dichotomy, and notwithstanding that TIGA is identified in the Complaint as "an independent unincorporated association," (Doc. No. 1-1 at 3), Defendants (both of which are registered in Delaware with their principal places of business in New York) removed the case on diversity jurisdiction grounds. This was improper, TIGA asserts, because its members include ten insurance companies incorporated in Delaware, and a like number incorporated in New York.[1] Thus, in TIGA's view, there are citizens of New York and Delaware on both side of the controversy, thereby destroying diversity.

---

[1] This assertion comes from the Declaration of Jane Murphy, TIGA's Administrator. Consideration of Murphy's Declaration is appropriate because, "when challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." Hertz Corp. v. Friend, 559 U.S. 77, 96-97 (2010); see Adkisson v. Jacobs Eng'g Grp., Inc., 790 F.3d 641, 647 (6th Cir. 2015) (stating that, when considering a motion that "attacks the factual basis for jurisdiction . . . the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists"). Furthermore, Defendants do not dispute Murphy's assertions.

2

In response, Defendants raise a number of arguments. All of those arguments, however, have been answered by Carden and its progeny.

## A.

Defendants first argue that "TIGA is not, and should not be considered, an 'independent unincorporated association' as commonly understood by our national jurisprudence or by TIGA's own definition." (Doc No. 10 at 3). According to Defendants, TIGA "is not a voluntary assembly of like-minded individuals in pursuit of a common goal, nor should it receive the procedural advantages of one." (Id. at 4). Rather, TIGA is a creature of statute, Tenn. Code Ann. §§ 56-12-101, *et seq.*, and its "entire existence, operation and ability rests on the decision of the Tennessee State Legislature." (Id.). Defendants also note that "a member's ability to transact business is predicated on mandatory membership in TIGA," yet the power to act is vested in a five-member board who are residents of Tennessee, meaning that, as a practical matter, "[t]he majority, if not all, of the insurers of 'high net-worth insureds' . . . have no influence on the way in which TIGA business is conducted." (Id.). Defendants further point out that decisions of the board are subject to approval by the Commissioner of the Tennessee Department of Commerce and Insurance, whose final actions and orders are subject to judicial review only in the Davidson County Chancery Court.

It may be that TIGA is not a typical unincorporated association, but Carden has been read as providing "a general rule: *every* association of a common-law jurisdiction, other than a corporation is to be treated like a partnership." Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 317 (7th Cir. 1998) (emphasis in original). "That rule applies without regard to the corporation-like features or other business realities of the artificial entity." Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1088 (11th Cir. 2010). This includes state-created insurance

3

Case 3:17-cv-01070   Document 19   Filed 09/25/17   Page 3 of 13 PageID #: 95

guaranty associations generally, and TIGA specifically.

Rhulen Agency v. Alabama Insurance Guarantee Association, 896 F.2d 674 (2nd Cir. 1990), involved suit against two dozen state insurance guaranty associations, among them TIGA. Although recognizing that such associations are created by state statutes and "are comprised of all insurance companies who are authorized to write casualty and property insurance policies in the particular state," id. at 676, the Second Circuit found Carden to be controlling. Thus, because "at least one insurance company member of each [defendant] Guaranty Association [wa]s a citizen of [plaintiff's state]," id. at 677, diversity jurisdiction was found to be lacking.

Diversity jurisdiction was also found to be lacking in Temple Drilling Co. v. Louisiana Ins. Guar. Ass'n, 946 F.2d 390 (5th Cir. 1991), a case involving the Louisiana Insurance Guarantee Association ("LIGA"). There, the Fifth Circuit found "the reasoning of Rhulen persuasive, and h[e]ld that, in light of Carden, LIGA has the citizenship for diversity purposes of each of its constituent member insurers." Id. at 394.

In Temple Drilling, like here, it was argued that a state insurance guaranty association is not a typical unincorporated association because it is not a voluntarily formed artificial entity. Rather, it is a creature of statute imposing mandatory conditions for doing business in a particular state. Also like here, it was argued that, "unlike a 'voluntary association' or 'partnership,' . . . members have virtually no interest in the outcome of [particular] litigation." Id. at 393. The Fifth Circuit summarily rejected those arguments based upon the following language from Carden:

> The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is

4

particularly unwelcome at the threshold stage of determining whether a court has
jurisdiction. We have long since decided that, having established special treatment
for corporations, we will leave the rest to Congress; we adhere to that decision.

494 U.S. at 197.

Even though Ruhlen and Temple Drilling were cited by TIGA in its Memorandum, and even though other courts have reached the same result,[2] Defendants do not address that line of authority in their response. Instead, they rely on Ruetgers-Nease Chem. Co. v. Firemen's Ins.., 566 A.2d 227, 229 n.2 (N.J. App. 1989) for the proposition that a state guaranty insurance fund (in that case Pennsylvania's) "is not a voluntary association but a creature of [state] law given the title of 'association.'" However, as Defendants concede, that language is *dicta* because the court did not decide the question of citizenship. Instead, the issue in Ruetgers-Nease was one of minimum contacts, and whether defendant could reasonably anticipate being haled into a New Jersey court. Not only was subject matter jurisdiction not discussed, the intermediate state court in Ruetgers-Nease was not constrained by the diversity statute, 28 U.S.C. § 1332, as is this Court.

Defendants next rely on Justice O'Connor's statement in Carden that "the nature of the named party does not settle the question of who are the real parties to the controversy," and that "the parties to the controversy test" is not met where a particular person or entity "can neither control the disposition of th[e] action nor intervene in the affairs of the [organization] except in the most

---

[2] See, Colorado Ins. Guar. Ass'n v. United Artists Theatre Circuit, Inc., 2016 WL 8578095, at *4 (D. Colo. Jan. 12, 2016) (relying on Carden, Rhulen, and Temple Drilling for the proposition that the Colorado Insurance Guaranty Association is a citizen of every state in which its members are citizens); Alabama Ins. Guar. Ass'n v. Frank Crum 1 Inc., 2012 WL 5931784, at *1 (N.D. Ala. Nov. 27, 2012) (same with respect to Alabama Insurance Guaranty Association); Iowa Ins. Guar. Ass'n v. New England Ins. Co., 701 F. Supp. 177, 178 (S.D. Iowa 1988) (finding pre-Carden that Iowa Insurance Guaranty Association is a citizen of each of the states of which one of its members is a citizen); Int'l Ins. Co. v. Virginia Ins. Guar. Ass'n, 649 F. Supp. 58, 60 (E.D. Va. 1986) (same regarding Virginia Insurance Guaranty Association); Trombino v. Transit Cas. Co., 110 F.R.D. 139, 144 (D.R.I. 1986) (same regarding Rhode Island Insurers' Insolvency Fund).

5

extraordinary situations." 494 U.S. at 204 (O'Connor, J. dissenting) (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458 (1980)). But, as Defendants concede, "Justice O'Connor dissent in Carden is not binding law." (Doc. No. 10 at 6). More than that, Justice Scalia, writing for the majority, took issue with Justice O'Connor's contentions, writing that "[n]ot a single case the dissent discusses, either old or new, supports th[e] assertion" that "the ability to initiate or control the course of litigation" factors into whether there is diversity jurisdiction involving business associations. 494 U.S. at 193. "A federal court, therefore, may not avoid the Carden rule simply by characterizing one member of an unincorporated association as the only 'real party' to the controversy, [which was the] approach advocated by the dissent in Carden." Osting, 613 F.3d at 1088.

For much the same reason, Defendant's reliance on Navarro is misplaced. That case, which served as an underpinning to Justice O'Connor's dissent, "had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." Carden, 494 U.S. at 193. Regardless, in the context of an unincorporated association, Navarro "is irrelevant, since it involved not a juridical person but the distinctive common-law institution of trustees." Id.

Also misplaced is Defendants' reliance on Certain Interested Underwriters at Lloyd's, London v. Layne, 26 F.3d 39 (6th Cir.1994). In that case, the Sixth Circuit acknowledged that the rules of citizenship for purposes of jurisdiction as between corporations and unincorporated associations "are straightforward," but found a "difficulty arises in applying them to Lloyd's of London–that venerable institution shrouded in the corporate vagaries of British law." Id. at 41. After discussing Lloyd's structure in detail, the Sixth Circuit observed that, "[i]n a nutshell, Lloyd's consists of unincorporated groups of investors, called syndicates, who appoint agents, called underwriters, to act on their behalf." Id. This presented the issue of "whose citizenship counts: the agent-underwriters' or the

6

syndicate members'?" Id. Because the underwriters "actually wrote the insurance, processed the claim, and are authorized to sue on the policy" and "[t]he certificate of insurance and the policy itself states that the insurance is 'effected with certain Underwriters at Lloyd's, London,'" the Sixth Circuit answered that question, "the underwriters." Id. The court did so under Tennessee's "venerable common law rule that an agent of an undisclosed principal is personally liable on a contract," and "a party who deals with such an agent may sue either the principal or the agent, but not both." Id. at 43. Because defendants chose to sue the underwriters, this meant that the syndicates "were no longer liable to the defendants on the contract" and, consequently were not real parties in interest under Rule 17(a) of the Federal Rules of Civil Procedure for purposes of defendant's counterclaim. Id.

Even though "[t]here is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy . . . the two rules serve different purposes and need not produce identical outcomes in all cases. Navarro, 446 U.S. at 463. Moreover, and unlike in Layne, TIGA is not acting as anyone else's agent; it is acting on its own behalf, utilizing the powers given to it under Tennessee law to vindicate its own rights. The choice of who to sue and the undisclosed principal rule that drove Layne simply have no application here. See D'Andrea Const. Co. v. Old Republic, 2014 WL 5018885, at *3 (D.N.J. Oct. 6, 2014) (noting that "Layne found the Underwriters, not the Names to be the real parties in interest to the suit since [plaintiff] elected to sue the Underwriters, and not the Names"); Humm v. Lombard World Trade, Inc., 916 F. Supp. 291, 296 (S.D.N.Y. 1996) (noting that Layne "considered significant the fact that the defendants had 'elected to sue the agents' when they brought their counterclaim against "Certain Interested Underwriters at Lloyd's,'" and refusing to follow Layne where, among other reasons, plaintiff made no such election and brought action

7

"purporting to represent all those interested under the Policy"); Bath Iron Works Corp. v. Certain Member Companies of Inst. of London Underwriters, 870 F. Supp. 3, 7 (D. Me. 1994) (finding Lloyd's analysis inapplicable where plaintiff sued "both the agents and principals by suing all 'underwriters,'" and no "choice between agent and undisclosed principal [was] made").

**B.**

Defendants next argue that if TIGA's citizenship is not limited solely to Tennessee, it should be expanded only to include Pennsylvania, where Reliance was incorporated. As support, they rely on the Act creating TIGA and on a district court decision involving a products liability action. This arguments, too, is unpersuasive.

Defendants cite Tenn. Code Ann.§ 56-12-107 for the proposition that "assuming the citizenship of the insolvent insurer is an appropriate measure of [TIGA's] citizenship in a suit for recovery." (Doc. No. 10 at 9). More specifically, they point to language in the statute which "states that TIGA shall '[be] deemed the insurer to the extent of its obligation on the occurred claims and to this extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent, including, but not limited to, the right to pursue and retain salvage and recoverable on paid covered claim obligations." (Id. quoting Tenn. Code Ann. 56-12-107(a)(2)). However, Defendants neglect to consider that the statute also provides that "the *association* may . . . sue or be sued," Tenn. Code Ann. § 56-12-107(b)(4) (emphasis added),[3] which is exactly what occurred here. Even leaving aside the settled proposition that "a State statute cannot confer jurisdiction on a Federal court," Ex parte McNiel, 80 U.S. 236, 236 (1871), the statute does not

---

[3] The statute goes on to provide that "such power to sue includes the power and right to intervene as a party before any court that has jurisdiction over an insolvent insurer as defined by this part." Id.

suggest the citizenship of TIGA for purpose of federal diversity jurisdiction.

Defendants' reliance on Oglesby v. Cooper Mfg. Corp., 144 B.R. 700, 711-12 (E.D. La. 1992) is equally misplaced. While that court found that the Oklahoma Insurance Guaranty Association ("OIGA") assumed the citizenship of its insolvent insurers, it did so in an entirely different context – a direct action against an insurer under 28 U.S.C. § 1332(c)(1) (A)-(C), which provides separate rules for determining citizenship. In fact, the Olbesby court did "not dispute that, in generally assessing the citizenship of unincorporated association, a court must look to the associations' individual members" and found that "[w]hile Temple Drilling clearly stands on solid ground, it does not apply . . . in a direct actions such as this case. Id. at 709-11.

### C.

Finally, Defendants cite three state court cases and one district court case[4] for the proposition that state insurance guaranty associations are not subject to personal jurisdiction by virtue of the citizenship of their various members. Because of this, Defendants claim that "an irreconcilable, inconsistency exists between the application of member's citizenship for diversity purposes, but not for purposes of personal jurisdiction." Again, Carden provides the rejoinder to this argument.

"The resolutions" reached in Carden "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." Carden, 494 U.S. at 196. "[T]he course" taken by the Supreme Court in Carden "does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that

---

[4] Those cases are General Elec. Co. v. California Ins. Guar. Ass'n., 997 S.W.2d 923 (Tex. App. 1999); Texas Property and Cas. Ins. Guar. Ass'n v. Boy Scouts of America, 947 S.W.2d 682 (Tex. App. 1997); Pennsylvania Life & Health Ins. Guar. Ass'n v. Laughlin, 27 Cal. Rptr.2d 507 (App. 4th Dist. 1994) and Home Indem. Co. v. Stimson Lumber Co., 289 F. Supp.2d 1222 (D. Or. 2003).

9

to the people's elected representatives. Such accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word 'citizen.'" Id. at 197. In short, any "further adjustments [are] to be made by Congress," id. at 196, and not by this Court.

The unequivocal language of Carden aside, "[t]he concepts of subject-matter and personal jurisdiction . . . serve different purposes, and these purposes affect the legal character of the two requirements." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701 (1982). "The practice of disregarding [an unincorporated association] as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction. . . . This principle has not been applied to personal jurisdiction, which presents distinct due process issues." Mountain Funding, LLC v. Blackwater Crossing, LLC, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006); see Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006) (holding that "a corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business," and "[i]t is not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction"); Weather Underground, Inc. v. Navigation Catalyst Sys., Inc., 2011 WL 1120106, at *3 (E.D. Mich. Mar. 24, 2011) (noting that defendant's argument improperly "equates the issue of personal jurisdiction—whether a defendant has sufficient minimum contacts with a forum to be haled into court there—with diversity of citizenship for purposes of federal subject matter jurisdiction"); Lalonde v. Delta Field Erection, 2000 WL 34440782, at *2 (E.D. La. May 4, 2000) (observing that "residency or citizenship is different from personal jurisdiction").

**D.**

The removal statutes "are to be strictly construed," Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 32 (2012), and the removing party "bears the burden of establishing its right thereto," Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 337 (6th Cir. 1989). Any doubt about the propriety of removal must be resolved in favor of remand. Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 405 (6th Cir. 2007); Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 704 (6th Cir. 2005). Because Defendants have failed to carry their burden of showing that complete diversity between the parties exists, TIGA's Motion to Remand will be granted.

## II. Request fo Attorney's Fees

TIGA seeks an award of attorney's fees and costs under 28 U.S.C. § 1447(c), arguing that "Defendants had no objectively reasonable basis to believe that diversity jurisdiction was present" (Doc. No. 7 at 4). TIGA elaborates by arguing that (1) "the Defendants should have known that the theory of jurisdiction set out in their notice was bunkum"; (2) "[n]o reasonable attorney would think [that citation to Ruetgers-Nease] was even colorable"; and (3) Defendants' response brief contains "fourteen pages of irrelevancies and factual errors [that] succeed in establishing little except that the Defendants did not (before or after removing) even skim the relevant notes of decisions." (Doc. No. 15 at 3, 5). These arguments are as harsh as they are unwarranted.

"An order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). The Supreme Court has held that the "standard for awarding fees should turn on the reasonableness of the removal.

11

Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

No doubt, Carden "remains a formidable bulwark" for those seeking to establish that an unincorporated association's citizenship is not defined by its membership, but "[t]he law of citizenship for unincorporated associations receives frequent criticism" and there are "some cracks in Carden's wall." Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 113 (3d Cir. 2015) (Ambro, J., concurring). Carden's concern was with the citizenship of limited partnerships, and there no controlling authority in the Sixth Circuit as to how Carden applies to state insurance guaranty associations. This lack of controlling precedent is of no small import given that the Sixth Circuit decision in Layne apparently stands alone among the circuits in its treatment of the citizenship of Lloyd's "unincorporated syndicate." See Osting-Schwinn, 613 F.3d at 1089-90 (characterizing Layne as being based upon "a flawed premise" and following Carden's "categorical approach" between corporations and unincorporated associations in determining Lloyd's citizenship); Indiana Gas, 141 F.3d at 318 (characterizing Layne's approach as "problematic under American law" and finding Carden controlling in relation to Lloyd's citizenship); E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 931 (2d Cir. 1998) (stating that "the Seventh Circuit [in Indiana Gas] has the better of this argument" and holding that "Names subscribing to insurance policy underwritten by Lloyd's of London must be of diverse citizenship in order to support diversity jurisdiction"); see also Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 859 (5th Cir. 2003) (recognizing "the Lloyd's citizenship conundrum").

12

It is not improper for counsel to make a good faith argument for a change in the law, Waeschle v. Dragovic, 687 F.3d 292, 296 (6th Cir. 2012), and a logical place to chisel at the cracks in Carden's wall is in a court within the Sixth Circuit where Layne was decided. TIGA's request for attorney's fees will be denied.

### IV. Conclusion

On the basis of the foregoing, TIGA's Motion to Remand will be granted, but its request for fees will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE